# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| STEFANIE J. GOLDSTEIN, | ) |
| Plaintiff, | ) Case No.: 2:13-cv-00095-GMN-GWF |
| vs. | ) **ORDER** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

Pending before the Court for consideration is a Motion to Remand (ECF No. 16) filed by Plaintiff Stefanie J. Goldstein ("Plaintiff"). This motion was referred to the Honorable George W. Foley, Jr., United States Magistrate Judge, for a report of findings and recommendations pursuant to 28 U.S.C. §§ 636 (b)(1)(B) and (C). On January 16, 2014, Judge Foley entered the Report & Recommendation (ECF No. 21), recommending Plaintiff's Motion to Remand be granted. Defendant Carolyn W. Colvin ("Defendant") filed her Objection to the Report & Recommendation (ECF No. 22) on February 3, 2014. Plaintiff has not filed a Response to the Objection.

## I.   BACKGROUND

Pursuant to Titles II and XVI of the Social Security Act, Plaintiff applied for disability insurance benefits and supplemental Social Security income on September 16, 2009, alleging that she became disabled beginning on September 1, 2007. (Mot. to Remand 3:4-7, ECF No. 16.) Defendant denied Plaintiff's application on March 12, 2010 and again on June 25, 2010. (*Id.* 3:7-10.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* 3:10-12.)

At the hearing on July 20, 2011, the ALJ applied the five-step sequential evaluation

process established by the Social Security Administration to determine whether Plaintiff was disabled.[1] (Mot. to Remand 3:14, ECF No. 16; Report & Recommendation 13:19-20, ECF No. 21.) Before deciding at step four whether Plaintiff's physical and mental impairments prevented her from performing her past work, the ALJ determined her residual functional capacity ("RFC"). (Report & Recommendation 14:10-11, ECF No. 21.) The ALJ concluded that Plaintiff had the RFC to lift and/or carry 20 pounds occasionally and 10 pounds frequently; to stand or walk at least four hours out of an 8-hour workday; to sit for six hours out of an 8 hour workday; that she had occasional postural limitations with limited stair climbing and no working around unprotected heights. (*Id.* 14:12-16.) Mentally, the ALJ determined that Plaintiff was limited to simple repetitive tasks. (*Id.*)

However, the ALJ found that Plaintiff's alleged symptoms—which included loss of muscle strength in her left arm and leg, numbness in her arm, poor vision in her left eye, difficulty speaking and concentrating, memory loss, and daily headaches—were not credible to the extent they were inconsistent with the assessment of her RFC. (*Id.* 12:10-18, 14:18-20.) Specifically, the ALJ noted that Plaintiff had been able to participate in the administrative hearing and respond to questioning without any apparent difficulty. (*Id.* 14:23-25.) The ALJ further found that Plaintiff had been noncompliant with hypertension treatment prior to a brainstem hemorrhage, and thus rejected Plaintiff's testimony regarding the severity of her impairments and limitations. (*Id.* 15:1,

---

[1] The five-step sequential evaluation procedure, during which a finding at any step that a claimant is disabled or not disabled concludes the assessment, is as follows: Under the first step, the Secretary determines whether a claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not considered disabled. *Id.* § 404.1520(b). Second, the Secretary determines whether the claimant's impairment is severe. *Id.* § 416.920(c). If the impairment is not severe, the claimant is not considered disabled. *Id.* § 404.152(c). Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1. The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment. *Id.* § 404.1520(d). If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work. *Id.* § 416.920(e). If the claimant can engage in past relevant work, then the claimant is not disabled. *Id.* § 404.1520(e). If the claimant cannot perform past relevant work, but the Secretary demonstrates that the claimant is able to perform other kinds of work, the claimant is not disabled. *Id.* § 404.1520(f). Otherwise, the claimant is entitled to disability benefits. *Id.* § 404.1520(a).

18:9-10.)

Based on an assessment of Plaintiff's RFC and testimony from a vocational expert, the ALJ found at step four that Plaintiff was capable of performing her past work as a mail order filler. (*Id.* 15:17-19.) The ALJ made an alternative finding at step five that Plaintiff can perform other jobs existing in the national economy, namely unskilled sedentary work, and subsequently finding that Plaintiff is "not disabled" pursuant to Medical-Vocational Rules 201.28 and 201.21. (*Id.* 15:19-24.) Plaintiff's request for review by the Appeals Council was denied on November 9, 2012, and the ALJ's decision became Defendant's final decision. (Compl. ¶ 2, ECF No. 3.)

On January 28, 2013, Plaintiff filed her Complaint for Review of the Final Decision of the Commissioner of Social Security (ECF No. 3). Defendant filed her Answer (ECF No. 10) on April 1, 2013. Plaintiff filed her Motion to Remand (ECF No. 16) the case back to the Social Security Administration on June 24, 2013. On August 14, 2013, Defendant filed her Response to Plaintiff's Motion to Remand (ECF No. 19) in which she also asks this Court to affirm Defendant's final decision. Plaintiff filed her Reply in Support of Motion to Remand (ECF No. 20) on September 3, 2013.

This matter was subsequently referred to Magistrate Judge Foley for a report of findings and recommendations. On January 16, 2014, Judge Foley entered a Report & Recommendation (ECF No. 21) recommending that this Court grant Plaintiff's Motion to Remand (ECF No. 16) because the ALJ erred in the fourth step of the sequential process. At this step, according to Judge Foley, (1) Plaintiff's noncompliance with treatment was not a valid reason for rejecting her testimony, and (2) the ALJ incorrectly concluded from the vocational expert's testimony that Plaintiff could perform her past work as a mail order filler. (Report & Recommendation 19:21-20:3, 24:19-20, ECF No. 21.) Judge Foley also found that the ALJ erred at step five in relying exclusively on the Medical-Vocational Guidelines, rather than on the vocational expert's testimony, to find that Plaintiff can perform other unskilled sedentary work in the economy and is

therefore not disabled. (*Id.* 24:24-26:16.)

Defendant filed an Objection (ECF No. 22) on February 3, 2014, arguing that the ALJ's findings were correct.

## II. LEGAL STANDARD

A party may file specific written objections to the findings and recommendations of a United States Magistrate Judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); D. Nev. R. IB 3-2. Upon the filing of such objections, the Court must make a de novo determination of those portions of the Report to which objections are made. *Id.* The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); D. Nev. IB 3-2(b).

A federal court's review of an ALJ's decision on social security disability is limited to determining only (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009), quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

## III. DISCUSSION

Defendant objects to the following of Judge Foley's findings: (1) that the ALJ erred in considering Plaintiff's failure to follow prescribed treatment in the credibility determination; (2) that the ALJ erred in concluding that Plaintiff is able to perform the mental demands of her past relevant work; and (3) that the ALJ erred in concluding that Plaintiff can perform other unskilled sedentary work in the economy. (Objection 1:23-2:4, ECF No. 22.)

### A. ALJ's Credibility Determination

Determining the credibility of a claimant's testimony about subjective symptoms is a two-

step process. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). However, the claimant's testimony as to the severity of symptoms must not be discredited "merely because they are unsupported by objective medical evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281).

In assessing a claimant's credibility, the ALJ is permitted to consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The Ninth Circuit has stated,

> Our case law is clear that if a claimant complains about disabling pain but … fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated. … [S]uch failure may be probative of credibility, because a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief.

*Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Additionally, "a claimant's failure to assert a good reason for not seeking treatment, 'or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.'" *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Here, Plaintiff testified at the hearing in 2011 regarding her severe pain and physical and mental limitations following a brainstem hemorrhage in June 2009. (Report & Recommendation 12:7-28, ECF No. 21.) At step four of the disability evaluation process, the ALJ discredited this

testimony because, *inter alia*, Plaintiff had not complied with her prescribed hypertension treatment prior to the hemorrhage. (*Id.* 14:26-15:7.)

While confirming the ALJ's finding that Plaintiff's testimony about the severity of her post-hemorrhage symptoms was not credible on other grounds, Judge Foley stated that the ALJ erred in using Plaintiff's *pre*-hemorrhage noncompliance as one of the reasons for rejecting Plaintiff's testimony about her *post*-hemorrhage pain. (*Id.* 20:2-3.)  However, Plaintiff claims that her disability began in 2007, at which time she was not complying with treatment for her hypertension, and Plaintiff has a history of noncompliance dating back to 2004. (*Id.* 1:24, 2:26-27, 19:27-28.)  Furthermore, Plaintiff's later explanation for noncompliance—that "she was testing various high blood pressure medications to determine which worked best"—does not constitute a "good reason" for the noncompliance. (*Id.* 19:23-26); *see* 20 C.F.R. § 404.1530(a), (c) (listing good reasons for failing to follow prescribed treatment, such as the treatment is contrary to your religious beliefs or the same procedure was previously performed with unsuccessful results).

As Defendant points out, Plaintiff's noncompliance was likely the cause of her hemorrhage, especially because the treatments, if taken as directed, are effective at reducing the risk of such a hemorrhage. (Objection 2:23-25, 3:12-15, ECF No. 22.)  Plaintiff's denial of symptoms, failure to seek effective preventative treatment, and later questionable explanation for her noncompliance all cast doubt on her testimony about her pain and limitations after the hemorrhage.  The distinction between pre and post hemorrhage noncompliance does not appear to have any significance, particularly when the noncompliance occurred during the period of claimed disability and likely contributed to Plaintiff's worsened condition.

Because in the Ninth Circuit an ALJ may consider noncompliance with treatment as a factor in determining credibility and because ALJs need only employ "ordinary techniques of credibility evaluation, such as the claimant's . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid," the ALJ did not err

here. *See Smolen*, 80 F.3d at 1284. However, because Judge Foley correctly confirmed the ALJ's finding that Plaintiff's testimony was not credible on other grounds, Judge Foley's finding of error on this point had no effect on the overall findings in the Report & Recommendation.

### B. Vocational Expert's Testimony

At the hearing before the ALJ, a vocational expert testified that a hypothetical individual with the same age, education, experience, and physical capabilities as Plaintiff would be able to perform Plaintiff's past work as a mail order catalog filler. (Report & Recommendation 13:1-17, ECF No. 21.) Based on the vocational expert's testimony and Plaintiff's RFC, the ALJ concluded that Plaintiff would be able to perform her former work and found her not disabled. (*Id.* 15:17-19.)

The Ninth Circuit, citing Social Security Ruling 00-4p, has stated that when a vocational expert provides evidence about the requirements of a job or occupation, the ALJ has "an affirmative responsibility" to ask about any possible conflict between the vocational expert's evidence and information provided in the Dictionary of Occupational Titles ("DOT"). *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). The court further stated that an ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job if the ALJ does not comply with SSR 00-4p. *Id.*

The DOT defines an "order filler" as needing a Reasoning Development Level of 3. However, Plaintiff's RFC limited her to simple repetitive tasks, and, in the Ninth Circuit, "a limitation to simple, repetitive tasks is inconsistent with Reasoning Level 3 jobs." *Kim v. Colvin*, CV 13-01841-JEM, 2013 WL 6670335, at *8 (C.D. Cal. Dec. 18, 2013); *see Tudino v. Barnhart*, 2008 WL 4161443, at *11 (S.D. Cal. Sep.5, 2008) ("Level two reasoning appears to be the breaking point for those individuals limited to performing only simple, repetitive tasks."); *Blakley v. Astrue*, C08-5186BHS, 2009 WL 279029, at *6 (W.D. Wash. Feb. 3, 2009) ("Level 3 reasoning [is] incompatible with a limitation to simple, routine and repetitive work."); *see also Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) ("[L]evel-two reasoning appears ... consistent

with ... Plaintiff's inability to perform more than simple and repetitive tasks...."); *but see Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (finding no conflict between job requiring reasoning level of three and claimant's limitation to simple work); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding no apparent conflict between job requiring reasoning level three and claimant's inability to do complex technical work). Instead, a limitation to performing simple repetitive tasks is more consistent with the ability to perform occupations requiring level 1 or level 2 reasoning. *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1136 n.10 (C.D. Cal. 2009). Therefore, there appears to be a conflict between the vocational expert's testimony and the information in the DOT, and the ALJ had an affirmative responsibility to inquire about this potential conflict. *See Massachi*, 486 F.3d at 1152.

Judge Foley found that the ALJ erred by relying on the vocational expert's testimony in making his step four determination without questioning the expert about the possible conflict between the testimony and the DOT. (Report & Recommendation 21: 7-24:3, ECF No. 21.) Defendant's assertions that there was no such conflict because the vocation expert testified about the job "as Plaintiff actually performed it" or because, in the absence of a binding Ninth Circuit decision, this Court should look to the case law in the Seventh and Eighth Circuits instead of the numerous cases from districts within the Ninth Circuit as well as the Tenth Circuit are unpersuasive. (Objection 4:6-7:7, ECF No. 22.) Because the ALJ relied on the vocational expert's testimony without asking the expert about the potential conflict between the DOT and the expert's testimony about the job requirements of a mail order filler, the ALJ erred at step four of the sequential process. Accordingly, Judge Foley correctly found err in the step four analysis.

**C. ALJ's Reliance on Medical-Vocational Guidelines**

The ALJ also made an alternative finding at step five of the sequential process that Plaintiff was "not disabled" pursuant to the Medical Vocation Guidelines because she had a RFC for the full range of sedentary, unskilled work based on her age, education, and work experience, and she

was therefore able to perform such work within the national economy. (Report & Recommendation 24:26-25:4, ECF No. 21.)

Generally, the Commissioner can rely on the testimony of a vocational expert or rely on the Medical-Vocational Guidelines to support a finding that the claimant can perform work that is available in significant numbers in the national economy. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001). "Where the claimant has significant non-exertional impairments, however, the ALJ cannot rely on the Guidelines." *Id.* at 1162. Instead, "a vocational expert's testimony is required when a non-exertional limitation is sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (internal quotations omitted).

Relying primarily on an Eighth Circuit opinion, Judge Foley found that a limitation to performing simple repetitive tasks was a sufficiently severe mental impairment to require vocational expert testimony at step five. (Report & Recommendation 25:23-26:13, ECF No. 21) (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997)). Judge Foley subsequently found that the ALJ erred in relying on the Medical Vocation Guidelines instead of the testimony of a vocational expert. (*Id.* 24:26-26:16.)

However, *Lucy v. Chater* is not directly applicable here. In that case, the Eighth Circuit found that the claimant's borderline intellectual functioning that limited him to Level 1 Reasoning was a sufficiently severe non-exertional impairment to require the testimony of a vocational expert. *Lucy*, 113 F.3d at 908-09. The court made no determination that a claimant—such as Plaintiff—with moderate memory or concentration problems and a limitation to performing simple repetitive tasks consistent with Level 2 Reasoning had a sufficiently severe non-exertional impairment to preclude use of the Guidelines at step five. *Id.*

Furthermore, the Ninth Circuit has held that a claimant's depression and subsequent moderate limitations on his ability to maintain concentration did not constitute a sufficiently

severe non-exertional limitation that prohibited reliance on the Guidelines without a vocational expert. *Hoopai*, 499 F.3d at 1076-77. Likewise, in a recent unreported opinion, the Ninth Circuit held that "[t]he use of the [Guidelines] was appropriate [because Claimant]'s postural and environmental limitations did not significantly limit his ability to do unskilled light or sedentary work. Nor did his restriction to nonpublic, simple, repetitive work." *Angulo v. Colvin*, 12-55736, 2014 WL 2444324, at *1 (9th Cir. June 2, 2014)) (internal citations omitted). Moreover, numerous district courts within the Ninth Circuit have explicitly rejected the proposition that a limitation to performing simple repetitive tasks is *per se* a sufficiently severe non-exertional impairment to require vocational expert testimony. *See e.g. Lopez v. Astrue*, C-09-03483 RMW, 2011 WL 3206958, at *8 (N.D. Cal. July 27, 2011) ("[A]n RFC restriction to "simple, repetitive tasks" does not necessarily give rise to a requirement for vocational expert testimony at step five."); *McLain v. Astrue*, SACV 10-1108 JC, 2011 WL 2174895, at *3 (C.D. Cal. June 3, 2011) ("[W]here a claimant is limited to simple, repetitive tasks, but otherwise retains the ability to perform a full range of work at all exertional levels, the [Guidelines] accurately and completely describe the claimant's particular impairments."); *Hansen v. Astrue*, C07-1198 CRD, 2008 WL 2705594, at *3-5 (W.D. Wash. July 7, 2008) ("Plaintiff maintains that a limitation to simple repetitive tasks is sufficiently severe in itself to require a [vocational expert]. The Court disagrees."); *cf. Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999) ("the fact that a non-exertional limitation is alleged does not automatically preclude application of the [Guidelines].").

Plaintiff's RFC limitation to simple repetitive tasks does not, by itself, show that she has a sufficiently severe non-exertional limitation that significantly limits the range of work permitted by her exertional limitations. Furthermore, Plaintiff does not present and this Court does not find any additional reason to hold that Plaintiff's non-exertional limitations are sufficiently severe so as to require a vocational expert's testimony at step five. Therefore, the Court finds that the ALJ did not err in relying on the Medical Vocation Guidelines to determine at step five that Plaintiff is

not disabled.  The Court further finds that the ALJ's determination at step five that Plaintiff is not disabled is supported by substantial evidence and that the ALJ applied the proper legal standards in reaching that determination.

Accordingly, the Court adopts the findings in the Report & Recommendation (ECF No. 21) that Plaintiff's testimony was not credible and that the ALJ erred at step four by not questioning the vocational expert about the potential inconsistencies between the expert's testimony and the DOT.  However, the Court declines to adopt the findings in the Report & Recommendation that the ALJ erred by considering Plaintiff's noncompliance with treatment in determining Plaintiff's credibility or by relying on the Guidelines at step five in finding Plaintiff not disabled. Furthermore, because the Court finds that the ALJ's determination at step five that the Plaintiff is not disabled applied the proper legal standards and was supported by substantial evidence, Plaintiff's Motion to Remand (ECF No. 16) is denied and Defendant's final decision is affirmed. *See Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) ("The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards.").

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the Report & Recommendation (ECF No. 21) is **ACCEPTED and ADOPTED in part** to the extent it is consistent with this opinion.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Remand (ECF 16) is **DENIED**. Defendant's final decision that Plaintiff is not disabled is affirmed.  The Clerk of the Court shall enter judgment accordingly and close the case.

**DATED** this 12th day of August, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Court